STATE OF MINNESOTA, *ex rel.* Jerome A. Oblinger, *vs.* FERDINAND
SPAUDE.

July 28, 1887.

**Municipal Corporations — Villages — Curative Act — Validity.**—Laws
1885, *c.* 231, declaring valid the incorporation of villages attempted to be
incorporated under Laws 1883, *c.* 73, is valid.

**Same—Laws 1885, c. 145, Applicable.**—Laws 1885, *c.* 145, is applicable
to such villages.

**Same—Village of Gaylord not a Separate Election District—Assessor.**
The village of Gaylord, in the town of Dryden, county of Sibley, is not
a separate election district, (except for the election of village officers,) and
is not entitled to a village assessor. The assessor for the town assesses
in the village.

*Quo warranto,* to ascertain by what authority the respondent as-
sumes to perform the duties of assessor in the village of Gaylord, in
the town of Dryden, in Sibley county, the relator claiming to be the
duly-elected and qualified assessor of such village. The answer of
the respondent alleges that he is the assessor of the town of Dryden,
and that the village of Gaylord was attempted to be created under
Laws 1883, *c.* 73, has never been incorporated under Laws 1885, *c.*
145, and is possessed of no corporate powers or privileges.

*Moses E. Clapp,* Attorney General, *McKenzie & Oblinger,* and *Kipp
& Preble,* for relator.

*W. H. Leeman* and *Cadwell & Parker,* for respondent.

GILFILLAN, C. J.[1] The relator claims to be village assessor of the
village of Gaylord, in the town of Dryden, county of Sibley. The re-
spondent is assessor of the town of Dryden. The questions in the
case are: *First,* has the village of Gaylord a legal organization as
a village? and, *second,* if it has, is it entitled to have a village as-
sessor?

To incorporate the village, proceedings were had under Laws 1883,
*c.* 73. That act was declared void in *State* v. *Simons,* 32 Minn. 540,

---

[1] Berry, J., because of illness, took no part in this case.

(21 N. W. Rep. 750,) for the reason that it attempted to delegate to the district courts powers essentially legislative. Before the decision in that case was announced, proceedings were had under the act for the incorporation of a large number of villages, and they had gone into operation under it. Laws 1885, *c.* 231, provided that all such villages "be, and they are hereby, duly incorporated as villages, with the same territorial boundaries specified in the order or judgment of the district court declaring any such village to be an incorporated village under the provisions of said act; and all such villages shall possess, and are hereby endowed with, all the franchises, rights, powers, and privileges, and subject to the duties, in said act enumerated and contemplated;" and provides that all officers of any such villages shall continue to occupy their respective offices, and declares all official acts of said officers legalized, and of the same force and validity as if the villages had been duly organized and incorporated from the date of the entry of the judgment or filing of the order of the district court purporting to incorporate any such village under said act, (of 1883.)

The act of 1885 is claimed to be invalid as in violation of sections 33 and 34, added to article 4 of the constitution of the state in the amendments of 1881: "Sec. 33. The legislature is prohibited from enacting any special or private laws in the following cases : * * * (7) For granting corporate powers or privileges except to cities; * * * (9) for incorporating any town or village. Sec. 34. The legislature shall provide general laws for the transaction of any business that may be prohibited by section one of this amendment, (section 33;) and all such laws shall be uniform in their operation throughout the state."

It is claimed that the act of 1885 is in its nature a special law, and not uniform in its operation throughout the state. Its operation is not confined to any part of the state. Whenever, in any part of the state, there is a village that comes within its classification, it operates. A law, to be general, need not operate alike upon all the inhabitants of the state, or all the cities, or all the villages, in the state. To require that would be *utterly impracticable*. A law *is* general which operates alike upon all the inhabitants or all the cities, or all the villages, or other subjects of a class of such subjects of leg-

islation. That for the purpose of legislation it may be necessary to make, and that the legislature may make, such classification, is undoubted. The only practical limitation to this power is that the classification shall be based upon some natural reason,—some reason suggested by necessity; by some difference in the situation and circumstances of the subjects classified suggesting the necessity of different legislation with respect to them,—and shall not be merely arbitrary, with no apparent reason except a desire to evade, under the forms of a general law, the constitutional inhibition of special legislation. The act of 1883 was not contrary to the provisions of the constitution above quoted. Had it been valid in other respects, and the incorporation of villages under it had failed by reason of omitting some of its provisions, a curative act, like the act of 1885, if it reached all villages within that predicament, could hardly have been called a special law within the meaning of the constitution. A law curing certain defects in the execution or record of deeds, though its operation would of course be confined to deeds or records with such defects, would, if it included all of that class, be a general, and not a special, law. We think the act of 1885 is valid.

To ascertain what rights, privileges, powers, and officers a village may have, we must, ordinarily, go to the law under which it was organized. The villages whose incorporation was declared valid by Laws 1885, c. 231, were by the terms of the act endowed with the franchises, rights, powers, and privileges, and subjected to the duties enumerated and contemplated in the act of 1883. Chapter 231 was passed January 29th. On March 10th was passed chapter 145. Its second section provides: "Every village which has been or shall be organized or incorporated under the General Statutes shall be hereafter governed according to the provisions of this chapter, to the end that uniformity of village government and equal privileges to all may be secured."

On the one side, it is claimed that by the words "General Statutes" the legislature meant to include all general laws, whether included in the compilation of 1878 or not; on the other side, it is claimed only that compilation was intended. The term "General Statutes" was the authorized and legal designation of the revision

of 1866. But that contained no law for the incorporation of villages, so that revision could not have been intended. The compilation of 1878 contained a general law for the purpose; but its authorized legal designation, that given to it by the legislature, is the "General Statutes of 1878." Though a general law (not included in any revision or compilation) is a general statute, those laws are not usually referred to by that term. It may therefore be said that the sense in which the designation is used in section 2, chapter 145, is obscure, except when the declared purpose of the section is taken into account. That purpose, to wit, to secure uniformity of village government, makes the section as applicable to villages incorporated under any general law, like Laws 1885, *c.* 231, as to those incorporated under the General Statutes of 1878. The evident intention was to subject all villages (except those incorporated by special acts) to the same rule. This is more apparent from the fact that the first section, while it does not require, enables villages with special charters to come under the rule. From the time of its passage, chapter 145 governed the villages referred to in chapter 231; and it is to that chapter we must go to ascertain if villages may have a village assessor. Section 18 of the chapter at first provided for that office as to all villages governed by the chapter; but Laws 1887, *c.* 62, amended it by adding: "Provided that, unless said village is a separate election district, the assessor of the township in which said village is situated shall assess the property in the village in the same manner as property situated in the township."

Of course each village is a separate election district for the purpose of electing village officers. The election district referred to in the amendment has reference to general elections. Chapter 145 is silent as to what villages are, and what are not, in that sense, separate election districts. But, from the amendment, it was in the contemplation of the legislature that some villages are and some are not. We find no general law in force prescribing what villages are and what are not. The provisions of Gen. St. 1878, *c.* 10, relating to the incorporation, government, and *status* of villages, are superseded by Laws 1885, *c.* 145, not only because of the section repealing all acts or parts of acts inconsistent with it, but of the provisions of section

2 that all villages, including even those incorporated under Gen. St. 1878, shall be hereafter governed according to the provisions of that chapter; thereby plainly excluding the operation of any other law on the subject. Doubtless, some villages incorporated under special laws are by their charters made separate election districts; and, under Laws 1887, *c.* 4, § 2, the supervisors of the town in which a village is situated may sometimes make the village a separate election district. That has not been done in the case of the village of Gaylord.

Let the respondent have judgment.