## STATE ex rel. GEORGE T. SIMPSON v. ANDREW J. WASGATT.[1]

February 24, 1911.

Nos. 16,999—(261).

**Act unconstitutional — class legislation.**

> Chapter 108, Laws 1909, providing for a county examiner of townships, villages, cities, school districts, etc., in counties having a population of more than one hundred thousand and an area of more than five thousand square miles, is class legislation, and prohibited by section 33, art. 4, of the constitution.

Upon information of the attorney general this court issued its writ of quo warranto directed to Andrew J. Wasgatt to show cause by what warrant he exercised jurisdiction as auditor's county examiner of St. Louis county. The respondent's answer admitted his appointment on May 1, 1909, as auditor's county examiner under the provisions of Laws 1909, c. 108, and that he had qualified as required by law; that he had never at any time assumed to have, claim or exercise any other, different, greater or less authority, duty or responsibility than that set forth in said law of 1909; that he was not and never had been a public officer, and that the writ showed that relator had other adequate remedies at law without resorting to this proceeding. There was no reply. Ordered that writ of ouster issue.

*George T. Simpson,* Attorney General, and *R. J. Montague,* for relator.

*William J. Stevenson,* for defendant.

LEWIS, J.

Defendant was appointed, by the county auditor of St. Louis county, "auditor's county examiner," as provided by chapter 108, p. 97, Laws 1909 (R. L. Supp. 1909, §§ 601—44 to 601—51), and this action was brought to test the constitutionality of that act.

[1] Reported in 130 N. W. 76.

The duties of the examiner are to make examinations into the affairs of each township, village, city, school district, and charitable and benevolent institution sustained wholly or partly by public contributions. It is made the duty of the officers and employees of said towns, villages, etc., to furnish to the examiner all information required under penalty of $1,000 fine or imprisonment. The examiner is required to report monthly to the county auditor and to the county attorney, and report all criminal acts discovered by him to the grand jury. The act applies to counties having at any time a population of more than one hundred thousand inhabitants and an area of more than five thousand square miles.

The court takes judicial knowledge that there are other counties in the state having a population of one hundred thousand or more, and that St. Louis county alone contains an area of more than five thousand square miles. Neither population nor area is made the basis of classification of counties by the constitution, and hence the act must be tested with reference to the rule that the subject-matter must bear some natural relation to the population and area. If it be true that such examiners are required in counties embracing wide stretches of country, where townships and school districts are remote from the county seat, and that this difference is sufficient upon which to base a classification, it was not adopted as the basis in this instance. If there is reason for this special method of inspection by a local examiner in counties of one hundred thousand inhabitants, or in those containing an area of five thousand square miles, then there is a call for it in all counties where townships and school districts are more or less remote from the espionage of the regular county officers. That condition exists in many counties of much less population and area. But the act applies to all cities and villages, etc., and to charitable institutions wherever located, and the disadvantage of remoteness of location does not seem to be a distinctive characteristic. In effect, St. Louis county is furnished with a means for the examination of public officials which is denied to other counties similarly situated. We discover no natural relation between the subject of this law and the population and area designated.

Ordered that the writ of ouster issue.