R. L. JENSEN v. INDEPENDENT SCHOOL DISTRICT NO. 17,
HENNEPIN COUNTY AND OTHERS.[1]

June 5, 1925.

No. 24,868.

**Chapter 43, Laws 1925, unconstitutional because special legislation.**

Chapter 43, Laws of 1925, providing that independent school districts in counties having not less than 400,000 inhabitants may change the site of a school house by a majority vote of those voting at the election is special legislation forbidden by the Constitution, for the population of the county bears no legitimate relation to the subject matter of the act and furnishes no proper basis for a classification of school districts for such purposes.

1. See Statutes, 36 Cyc. pp. 1005, 1010.

Action in the district court for Hennepin county to restrain defendants from calling an election to vote upon changing the site of a school house. Defendant appealed from an order, Bardwell, J., overruling their demurrer to the complaint and the question presented was certified as important and doubtful. Affirmed.

*Lancaster, Simpson, Junell & Dorsey,* for appellants.

*H. E. Maag,* for respondent.

TAYLOR, C.

Section 2715, G. S. 1913, being section 2798, G. S. 1923, provides:

"A site on which a school house stands or is begun shall not be changed, except by vote therefor, designating a new site, by a majority of the legal voters of the district, who have resided therein not less than one year prior to the vote."

Chapter 43, p. 41, L. 1925 provides:

"That any independent school district in any county now or hereafter having a population of not less than 400,000 inhabitants may,

[1]Reported in 204 N. W. 49.

at the annual meeting or at any special meeting or election called for that purpose, have power to designate an original site or change an existing site by the designation of a new site for a school house, and provide for building or otherwise placing a school house thereon, when due and proper notice has been given of such proposed action, by a majority vote of those present and voting at such meeting or election."

Plaintiff, a resident and taxpayer of defendant district, claiming that the act of 1925 contravenes sections 33 and 34 of article 4 of the Constitution, seeks to enjoin defendants from holding an election under and pursuant to that act for the purpose of changing the site of a school house of the district by a majority vote of those voting at the election.

The Constitution, in the sections cited, forbids passing any local or special law regulating the affairs of either counties or school districts, and requires that all laws regulating such affairs shall be uniform in their operation throughout the state. The single question presented is whether the act of 1925 violates these provisions.

It will be noted that section 2715, G. S. 1913, is of state-wide application and requires the vote of a majority of the legal voters of the district who have resided therein for not less than one year in order to change the site of a school house. This section applies to both independent and common school districts. It will also be noted that the act of 1925 applies only to independent school districts in counties having a population of not less than 400,000 and permits a change of the site of a school house in such district by a majority vote of those present and voting at the election.

The last census shows that Hennepin county, which includes the city of Minneapolis, has over 400,000 inhabitants, and that no other county has over 250,000 inhabitants. Consequently the act of 1925 is operative only in Hennepin county. That the legislature has power to classify counties, and that the classification is not rendered invalid by the mere fact that when the law was passed there may have been only one county in a given class is thoroughly settled. But, where counties are classified according to population, the mat-

ter of population must bear some natural, reasonable and legitimate relation to the purpose intended to be accomplished by the law.

In State ex rel. v. Ritt, 76 Minn. 531, 79 N. W. 535, a statute providing for the election of a county assessor in counties having not less than 100,000 nor more than 185,000 inhabitants was held void as special legislation. The court, in the course of the opinion observed that classification on the basis of population might be appropriate for legislation upon one subject but not upon another; and, as an illustration, stated that although a classification of counties on the basis of population might be proper for the purpose of fixing the compensation of county officers, as the population would presumably bear some relation to the extent of their duties, yet a classification on any such basis for the purpose of fixing the time for holding elections to elect such officers would be purely arbitrary.

In Murray v. Board of Co. Commrs. 81 Minn. 359, 84 N. W. 103, 51 L. R. A. 828, 83 Am. St. 379, an act providing for the treatment of indigent inebriates at the public expense in counties having a population of 50,000 or more was declared unconstitutional because the classification by population was purely arbitrary.

In Duluth Banking Co. v. Koon, 81 Minn. 486, 84 N. W. 6, the court after quoting the statements defining the essentials of a valid classification made in the Ritt and Murray cases, supra, held that a statute relating to taxes in counties in which the delinquent taxes exceeded 30 mills on the dollar of the assessed valuation of the real property in such counties was special legislation and void because the classification was arbitrary and not founded upon conditions which would justify a distinction between counties.

In State ex rel. v. Westfall, 85 Minn. 437, 89 N. W. 175, 59 L. R. A. 297, 81 Am. St. 571, the court said:

"Population * * * may be a basis of classification of counties for the purposes of legislation if germane to the purpose of the law; otherwise not. * * * If it is clear that there is no natural relation or connection between the population of counties of a particular class and the subject-matter of the statutes so classifying them for the purposes of legislation, courts ought unhesitatingly to

hold them unconstitutional; otherwise it would sanction the classification of counties on the basis of population for any and all purposes of legislation, whereby the constitutional amendment forbidding special legislation would be deprived of all virility."

In Hjelm v. E. M. Patterson, 105 Minn. 256, 117 N. W. 610, 127 Am. St. 560, the syllabus written by the court reads:

"Chapter 458, Laws 1907, providing for the appointment of a superintendent of highways in counties having less than two hundred thousand inhabitants, is unconstitutional. Population alone furnishes no proper basis for the classification of counties for the purpose of legislation of this character."

In State ex rel. v. Wasgatt, 114 Minn. 78, 130 N. W. 76, the statute provided for the appointment of a county examiner in counties having a population of more than 100,000 and an area of more than 5,000 square miles. Only St. Louis county had this population and area. The court held the statute void saying:

"In effect, St. Louis county is furnished with a means for the examination of public officials which is denied to other counties similarly situated. We discover no natural relation between the subject of this law and the population and area designated."

Among the other cases involving similar questions are: Nichols v. Walter, 37 Minn. 264, 33 N. W. 800; State v. Cooley, 56 Minn. 540, 58 N. W. 150; State v. Walker, 83 Minn. 295, 86 N. W. 104; State ex rel. v. Brown, 97 Minn. 402, 106 N. W. 477, 5 L. R. A. (N. S.) 327; State ex rel. v. Erickson, 140 Minn. 509, 167 N. W. 734; Sacks v. City of Minneapolis, 75 Minn. 30, 77 N. W. 563; State ex rel. v. Justus, 90 Minn. 474, 97 N. W. 124.

The act of 1925 classifies counties on the basis of population for the purpose of determining whether independent school districts therein may change the site of a school house by a majority vote of the legal voters voting at the election, or only by a majority vote of all voters who have been residents of the district not less than one year. We fail to see any natural or legitimate relation between the population of the county and the subject-matter of the act; and,

therefore, are constrained to hold that the classification is purely arbitrary and that the act is special legislation forbidden by the Constitution.

Order affirmed.